May it please the Court, my name is Paul Ward. I'm here for Robert Wilson, who's the habeas petitioner and appellate in this case. The Fullerton police detective who detained Mr. Wilson never articulated any facts that would lead a reasonable person to conclude that Mr. Wilson was committing any crime or about to commit any crime before the detective detained him. What were evidence that he was drunk? What was the evidence on that? The evidence was that the officer smelled alcohol and saw a Tupperware cup sitting next to Mr. Wilson. And the Court also referred to Mr. Wilson's lack of judgment in the responses he gave to the police officer. First of all, the officer did testify that it's not against the law in California to be drunk in public. The statute requires that you be very, very drunk, that you be so drunk that you're a danger to yourself. Danger to yourself or others, yeah. Danger to yourself or others. 647-F. 647-F, or blocking the sidewalk in some way, you know, really under the influence so badly that you essentially can't stand up. Counsel, let me just point you directly to what troubles me about your side of the case, and maybe you can help me out. The state court, as pointed out by the district court in its opinion, also analyzed this case as follows, by saying that even if an officer lacks the authority to detain someone, that unless the officer is using excessive force, one still does not have the right to resist. And there are good reasons for that rule that are spelled out in the case law, and it's not just a California rule. Why isn't that an answer to your argument that the officer lacked the proper authority to detain, because there is not evidence here that the officer used excessive force? Well, first of all, that portion of the opinion slips away from the question of whether the officer was performing a lawful duty and goes on to the crime of battering. Now, what the Court says is absolutely correct about the crime of battering, but not about the crime of interfering with a police officer. Well, I read that, I guess I read it as being a broader discussion than that. But I guess I still don't understand why that isn't an answer, because you're saying, look, he had no authority to detain him. And I'm saying, as I read the State court, it's saying, well, okay, suppose he had no authority. So what? There's still no right to resist unless the ‑‑ because there are other methods of later challenging the lawfulness of the detention. You can't resist even an unlawful detention. So I guess what I'm having difficulty with is understanding why that analysis, which seems to be an alternative analysis, is not sufficient under our standard of review here. Okay. Well, first of all, the question arises exactly when did the officer detain Mr. Wilson. And it was when he ordered him down, to come down from the stairs, not when he went upstairs and put his hand on his shoulder. He detained him before that. He said, you come down from these stairs so we can talk to you. That is very much a detention, as this Court has decided in previous cases, ordering somebody to put their hands on the steering wheel where the officer can see them. The officer is free to investigate. He smells alcohol. He's free to investigate. But that means only that he can go up and attempt to engage Mr. Wilson in consensual conversation. He can't give any orders to Mr. Wilson to come down. He can't give any orders to Mr. Wilson to produce some identification. All he can do is attempt to engage him in consensual conversation. He can walk up the steps. He can look at him. He can stand there and observe him for a while. But when he orders him to come down from the steps so they can talk to him and orders him to show identification, that is when the detention occurs. So at that point, the officer, as I say, the officer never had reasonable suspicion that Mr. Wilson was so drunk that he was a danger to himself or others before he detained him. Now, the Court of Appeal opinions in footnotes numbers 3, 4, and 5 all contain erroneous statements of the law. And in footnote 5 as amended, they say the officer is free to investigate. And that's true. The officer is free to investigate. But there's a difference between investigating and detaining. And this officer detained Mr. Wilson very early in this process, before he ever put a hand on him. He said, come down off those steps. We want to talk to you. Show us some ID. And that's an interference with the person's ability to go about their daily activities, and that is a detention. Now, so at that point, the, when the officer does detain him, the officer has detained him. Mr. Wilson says, you know, I don't have to show you anything. I don't have to talk to you. I swear as if I'm, that's still no grounds for detaining, you know. It's simply just, I mean, Mr. Wilson is correct on the law, even though he's very rude to the officers. He is absolutely right on, on the law. He doesn't have to talk to them. He can decline the offer for consensual conversation. He can decline the offer to show them identification. There is no, there is no identification statute in, constitutional identification statute in California. Do you think there's a reasonable suspicion that criminal activity was afoot? No. There was no activity, no reasonable suspicion that criminal activity was afoot. Mr. Wilson is sitting up on these stairs, and he, there's an order of alcohol, order of alcohol. Now, the presence of the Tupperware cup, they never determined what was in the cup. And even if they had, it wouldn't be relevant to the question of how drunk Mr. Wilson already was. If the cup is full of beer, is the cup empty, does the cup have water in it, it doesn't matter. Mr. Wilson is as drunk as he is drunk. And if he's not so drunk that he is a danger to himself or others, then the officer has no reason to arrest him. And the officer certainly is free to go about and attempt to engage him in conversation. But if Mr. Wilson declines, he's free to do that, and the officer has no reason to arrest him. Well, and the officer, he grabbed him, what, by the shoulders or arm? Went up and apparently grabbed him by the shoulders and the hand. And he wanted to bring him down, and they both. Tumbled. They both tumbled down the stairs, yes. And his elbow hit the officer's nose and broke it. Yeah. Actually, the transcript is not clear about what or who hit the officer's nose, how that got broken. There's no testimony. I mean, the court of appeal opinion is incorrect when it says that Mr. Wilson slugged the officer. That simply, there's no evidence in the transcript to support that. What did the officer testify to as to what happened there? Did he say that Wilson slugged him? No. He said he didn't know when it happened. And neither did his partner. His partner said that Mr. Wilson had his hands by his side the entire time. So there's no, you know, he may have head-butted him. They may have bumped into a railing. I have no idea how the officer's nose got broken. What is the Supreme Court law that was unreasonably applied under AEDPA? Under? Under our standard of review, we have to conclude not only that we disagree with the state court, but that the state court unreasonably applied a Supreme Court precedent or made a decision that was contrary to a Supreme Court precedent. So what is it that the state court did that was not only erroneous under California law, but that was a violation of something the Supreme Court said about Federal law? Well, first of all, of course, as to the stop-and-identify statute, 647E, they claim that it's constitutional, and clearly it's not. The Supreme Court in Heidel said, you know, referred to Colander v. Larson as an example of an unconstitutional statute, yet the Court of Appeals says, oh, no, it's constitutional. It's just like the Nevada statute, so it's constitutional. And in footnote 5, they cite the law about investigating and then reach exactly the opposite conclusion. They don't distinguish between investigation and detention. Any interference with the citizen's freedom of movement, such as come down from the stairs, I need to talk to you, is a detention. And they don't recognize the state court doesn't recognize that. They just get the law backwards on them. What happened to his case in the end? Well, he was convicted of two felonies and sentenced to 25 to life. 33 years to life is what I have. Right. 33 to life. That's correct, Your Honor. Would you settle for 25? No, Your Honor. I'll reserve my remaining 30 seconds. It's minus 30. Yeah, it's minus 30. Oh, I'm over? Oh, I'm sorry. That's all right. We're all getting younger, too, as the years go by. So we like that kind of counting. Thank you. I may have pleased the Court. I'm Donald Ostertag. I'm a Deputy Attorney General for Respondent. I'd like to start by discussing the McDaniel case, which I filed a 28-J letter for last week. I'm not certain whether the Court received that. I filed it, I believe, on Wednesday last week. And I really think that that case disposes of the issue in this case. And, really, the sole issue in this case is one of sufficiency and one of whether the state court properly applied Jackson. And what happened in McDaniel ---- You're talking so fast. Give me a second. I'm sorry. I said the sole issue in this case is one of sufficiency and one of whether the state court properly applied Jackson. Well, I'm not sure that's the only issue. Well, that is the manner in which the issue has been framed the entire time. Maybe improperly framed. Well, to the extent that there is any other issue, I feel that that has not been properly exhausted, hasn't properly been certified as an issue to be raised in appeal. Well, I've gone back and looked at the pleadings in the earlier cases and the briefs, and clearly the constitutionality of E was raised, and that's at issue here. Was he ---- was the officer discharging a duty? Was he? A lawful duty? Absolutely. And I believe that the reason for that here is because the fact support that he was investigating that criminal activity was afoot. And there seems to be ---- Well, but nothing that tied it to this particular guy. They were going through the neighborhood because they were looking for a homicide suspect. Correct. So he could ask Mr. Wilson a question, but Mr. Wilson didn't have to answer. No, that's true. But Mr. Wilson chose to answer, and he chose to answer in a belligerent manner. No. He said, I don't have to answer your questions. Fuck you. Before there was ever a detention in this case ---- That's the way people talk these days. I choose not to. They get it on television. That all happened before there was ever a detention. The cussing happened. The detection of the odor of alcohol happened. Before the officer ever said, can you please come down the stairs and identify yourself, he detected alcohol. He noticed the person acting in what I interpret as a belligerent manner when he's cussing at him, and he has this dazed and angry glare as the officer ---- But the fellow is sitting there on the stairs, and he said, I don't have to talk to you. Is that belligerent? I think I might, if I were sitting on the stairs for some reason, say to the officer, I don't need to talk to you. Well, you put it so nicely, Your Honor, and here I don't think that's what happened. I think he cussed at him, and I think that that was very belligerent in the manner in which he did it. You think that swearing is a crime? No, I do not believe that swearing is a crime. I do believe that the manner in which the defendant was acting in this case gave further evidence to the officer's reasonable suspicion to detain him. That seems just odd to me that because the fellow says, I don't want to talk to you, you can detain him. It wasn't simply that the fellow said, I don't want to talk to you. It was the manner in which he was acting, it was the detection of the odor of alcohol, it was the place where he was located by himself, after hours in a commercial area, places that had a history of vandalism, of break-ins, of people urinating and defecating in the areas, of people being nuisances. But this fellow wasn't doing any of these things. He was sitting on the stairs, and he says, I don't want to have anything to do with you. The officer did not observe him seen doing any of those things, but we don't know. All the officer was simply ---- But he can't have reasonable suspicion one way or another that this fellow did any of those things. I disagree with that. I believe that here there is reasonable suspicion to believe that possibly criminal activity is at foot. Now, we don't need probable cause to believe that he certainly committed a crime. That would justify an arrest. But here, all we need is reasonable suspicion to believe the criminal ---- How could it be at foot if he's sitting? I don't know how to respond to that, Your Honor. You know, it seems that we're sort of blurring this line between probable cause to arrest and reasonable suspicion to detain. Now, there doesn't need to be conclusive evidence that he violated 647E or that he violated 647F or that there was definitely a crime that he had committed. All we need is reasonable suspicion to believe that criminal activity may be at foot. That justifies a limited detention to determine whether it was or was not at foot. Well, I guess this is where you have a little difficulty, and that is how could he have a reasonable suspicion that this fellow was guilty of anything, sitting there on the stairs? Again, Your Honor, he doesn't need to believe that he is guilty of anything at that time. He simply needs to have a reasonable suspicion that possibly criminal activity is at foot. I mean, these two statutes that the jury was instructed on, 647E and F, were just two of many possibilities that this officer could have been investigating. And again, I think the question here is whether the State court properly applies the action. He didn't look at this fellow and say, well, he looks a lot like the culprit that we're looking for. He's got red hair. He's wearing purple shoes. None of that. And had that evidence been there, I believe that that would have supported probable cause to arrest him. But that's not what we're dealing with here, Your Honor. It's reasonable suspicion for a limited detention. That's all we have. Well, I guess the definition of reasonable suspicion is the key here. Was there reasonable suspicion? You think so. I've never read a case as devoid of reasonable suspicion as this one. I, you know, with all respect, disagree with that statement. I believe that with the evidence that was presented here. What cases do you have that support your position that this was, that there was reasonable suspicion here? You know, I think this stretches all the way back to Terry v. Ohio. And again, the question here is whether sufficient evidence supported the State court's conclusion that the officer was acting lawfully. That's all we're dealing with. It's not a purely Fourth Amendment issue at all. It's a question of sufficiency to support a conviction for Penal Code section 69. Well, what happened here? He went up and they fell down the stairs together. So he was putting the strong arm onto this guy. Absolutely. And that was a manner of detention. And all that's needed to support the detention is reasonable suspicion. And I think this does go back to the days of Terry v. Ohio. All you need is reasonable suspicion to believe that criminal activity may be afoot. But, you know, he was just sitting there not doing anything. After hours in a commercial district that was known for all of these problems, and keep in mind, before a detention ever occurred, he detected the odor of alcohol, saw him with a glass next to him. You have him making an angry glare. What glass was down three stairs? Near him, I suppose. Oh, I know. It was down three stairs, wasn't it? I don't recall exactly where the glass was located. That's what I remember. From my recollection, the officer interpreted that it was his cup. It was never determined what was in the cup, is that right? That's correct. Never fingerprinted? No, not that I'm aware of. Did he ever arrested for public drunkenness? No, nor did he need to be. What? I said no, Your Honor, nor did he need to be. It wasn't necessary for there to be probable cause to arrest him for public drunkenness. Then what was he arrested for? For battering the police officer. For Penal Code Section 69, under the State Penal Code, which – How did he batter him? I'm saying if he – is there any evidence that he hit the officer? Absolutely, Your Honor. I believe that that's in the officer's testimony. I don't even know. I'm sorry? What was that evidence again? The evidence that was that when he was fighting with the officer, he forced the officer to roll down the stairs with him, and then while flailing about – Well, they lost their balance and went down together. Neither of them wanted to fall down the stairs. I – I don't remember anything like that. I just remember what I recall is that the officer was trying to bring him down the stairs, and he resisted, and then they both tumbled down the stairs. Am I wrong? I think that you're correct, but the evidence goes further than that, in that once they are at the bottom of the stairs, there's evidence that the defendant was flailing about and acting in an obligerant manner and had to be subdued with pepper spray. Before that happened, he was able to make contact and break this officer's nose, sending blood everywhere. Flailing around, well. There's no evidence that he hit the officer in the nose. Is that correct? No, that's incorrect. I believe there is evidence here. What is it? You know, I don't have the citation right in front of me. I could pull out the excerpts of the record and look at the officer's testimony. That's a pretty critical thing, I think, don't you? In some respects, based on what this defendant did, the officer resulted with a broken nose that caused surgery and several weeks off the job, based on what this defendant did. And, again. That could have just been from his arriving at the bottom of the stairs and hitting something on the way down. Excuse me. I have a question about what is actually in front of us for review. There were two convictions, one for resisting an executive officer and the other battery with great bodily injury. And as I understood it, only the resisting an executive officer is on appeal. That's absolutely correct. So the facts regarding the battery with great bodily injury are not in front of us? At least that's how I understood the certificate of appealability. And I want to ---- No, you're absolutely correct, Your Honor. The manner in which this issue has been framed the entire time has been in terms of the sentenced crime, which was for penal code section 69, preventing or deterring an officer from performing his lawful duties. The battery on a police officer, that sentence was stayed and is not before this Court of Appeal. All that is before the Court is a violation of section ---- The state, you say? Correct. The state court stayed the sentence on that crime for battery on a police officer. So, really, all that is before this Court is whether sufficient evidence supports the state court's conclusion that this defendant prevented or deterred an officer from performing his lawful duties. Here I think that evidence is truly overwhelming. I, you know, again, just come back to the idea that it seems that we're confusing probable cause and reasonable suspicion to a large degree here. There doesn't need to be conclusive evidence that this person committed a crime. There simply needs to be, you know, evidence that supported the officer's investigation of whether this person maybe even was about to commit a crime. You know, that's all that needs to be there. You know, these are the issues. One is an instructional problem. It's alleged the district court should not have instructed the jury that the officer could have detained Wilson for loitering because the loitering statute is unconstitutional. And I think it's been so held by the California courts. And two, that the officer had no reasonable suspicion that Wilson was drunk in public. I don't believe that an instructional issue is properly before this Court. I don't feel that that issue is properly exhausted. I don't feel that it was properly certified in the certificate of appealability. I mean, the jury instructions are not even a part of the excerpts of record in this case. The entire time it has been framed as a question of sufficiency of the evidence. And that instructional error was claimed on direct appeal. Yeah. Again, this entire issue has been framed as one of sufficiency of the evidence. It has taken that shape in all the briefing in this case. Had instructional error been an actual claim in this case, one would assume that the jury instructions would be a part of it. Well, it didn't go up on appeal that way. I'm sorry? It wasn't that an issue on appeal. It sort of was ambiguously phrased in lots of different – it could have been interpreted in many ways. The way in which it had always been interpreted by the courts was one of sufficiency of the evidence. And that is what's before this Court. That's the manner in which it was briefed. It comes back to a question of whether the State court properly applied Jackson. Well, and even assuming this is an instructional issue, to respond to that question, the jury was never even instructed on this credible and reliable information at all. They weren't instructed on the former Solomon interpretation. They were instructed on the plain language of the statute. They were instructed on this felon – on this loitering statute, which is unconstitutional. No. They were instructed on the plain language of the statute. It was the previous State court's interpretation that was held unconstitutional. They were never instructed on that language that the State court imputed into that statute to find it unconstitutional later by Collins. They were never instructed on that language. Why would the judge even give that instruction? I believe it was as an example of possible things that the officer could have been looking at. He could have been looking at – You know, I started sentencing people for 647F in 1965, the old Lincoln Heights jail. And it was declared unconstitutional. And I think later that provision about danger to oneself or the public was added on. But I suppose with that, unless there are any further questions, I'm prepared to submit. Thank you. Thank you. The State argues that we're confusing reasonable suspicion versus probable cause. And I think the confusion here is the difference between investigate and detain. Well, a lot of it is confusing, you know. Yeah. I mean, you can define probable cause as the officer knows that a crime has been committed or one has been reported and that there's reasonable suspicion that the person is about to rest or has committed the crime. Right. And if the officer has reasonable suspicion that a crime has been committed or is about to be committed, then he can detain for a terrorist stop, investigate. But there's no basis for reasonable suspicion that Mr. Wilson was going to violate any statute. The smell of alcohol is the most, I guess – Well, what we have to be reviewing is not the record de novo. What we're actually looking at is the state court's written decision to determine whether it was an unreasonable application of Supreme Court law or an unreasonable finding of fact. Right. We're not looking at it anew. And on page 3 of the opinion, the court goes through its version of the facts, which, as I take it from your opening brief, have not been directly attacked. So this – there's no – nothing on this page that is directly attacked in your brief. So if we take those facts as stated by the state court, why don't they equate first to reasonable suspicion of public drunkenness and escalating into a fear for their own safety, which also separately justifies brief detention? That's really what the court is going through here. Yes. With all due respect, I think Your Honor is incorrect. The officer – an officer can pat down somebody for weapons only after they have reasonable suspicion of a crime and have detained them. That's the essence of terror. Right. And here's what the court says, starting at page 2. Two? At the bottom of page 2, they explain how they got to the place where they got, and then they walked to the base of the staircase on the top of which Wilson was seated. Instead of responding to their approach, Wilson proceeded to stare straight ahead with an angry glare. When Ellison asked him how he was doing, Wilson remained silent. Ellison then asked him if he were from around here. Again, Wilson remained mute, staring ahead. Ellison then asked if he knew he was in a closed commercial area, to which Wilson spat out, fuck you, I don't have to talk to the police. With this, Ellison detected the smell of alcohol coming from Wilson and then noticed a Tupperware cup sitting next to him on the stair. Ellison developed a suspicion that Wilson might be too intoxicated for his own safety and that of others, considering his location on the stairs and lack of judgment as evidenced by his response. And it goes on from there. Now, aren't those the facts that we have to take as whether they do or don't support a reasonable suspicion in this case? That is correct. And to say that those facts give reasonable suspicion for being too drunk in public, to be a danger to yourself or others, is an unreasonable interpretation of the facts. Okay. Well, isn't that the narrow question, though? That's the narrow question. Well, you didn't raise an unreasonable interpretation of the facts as an issue in this case. You raised a sufficiency of the evidence, which is slightly different. As I understood your argument, it was taking the facts as I've just read them, that does not, as a matter of law, equate to reasonable suspicion. That's how I understood your argument. That's correct. And to say that it does, I think, is an unreasonable interpretation of those facts. If all you have is a smell of alcohol, and you cannot make the leap to being so drunk that you're a danger to yourself or others, the question, you know, does suspecting that he might be drunk warrant a detention for being so drunk in public that you're a danger to yourself or others? To say that's – to say that that fact gives rise to that legal conclusion is an unreasonable interpretation of the facts. It's just simply not – there's no way that a reasonable person can smell alcohol on Mr. Wilson and observe him and what he was doing and say, this guy is a danger to himself or others. It's just – there's just not sufficient evidence of being that – being as drunk as 647F requires. I'll grant court, you know, Ellison can continue to investigate, but that only means that he can go up and try to talk to Mr. Wilson. He can, you know, maybe position himself to see if his eyes are bloodshot. He can see if he's wobbling as he's sitting there on the steps. But he can't order him down to the bottom of the steps so the officer can talk to him. There is no officer safety exception to the requirement for reasonable suspicion to detain. I think we're six minutes over. Yes, I see that. Any last questions, or then I'll submit. All right. Thank you. This matter will be submitted and the court will recess until 9.30 a.m. tomorrow morning. Thank you.
judges: Fletcher B. , Pregerson, Graber